IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LINNETT RESTO-FELICIANO, *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> DLJ MORTGAGE CAPITAL, INC., *et al.*, <br><br> **Defendants.** | **Civil No.** 20-1562 (FAB) |

OPINION AND ORDER

BESOSA, District Judge.

Before the Court is defendants DLJ Mortgage Capital Inc. ("DLJ Mortgage Capital") and Select Portfolio Servicing. Inc. ("SPS") (collectively, "defendants")'s motion to withdraw reference to this Court from the United States Bankruptcy Court for the District of Puerto Rico ("Bankruptcy Court"). (Docket No. 1, Ex. 3.) For the reasons set forth below, the defendants' motion is **DENIED.**

I.  **Background**

The motion to withdraw reference challenges the authority of the bankruptcy court to adjudicate an adversary proceeding. The underlying dispute concerns purported violations of the automatic stay and the Fair Debt Collection Practices Act ("FDCPA"). See 11 U.S.C. § 362; 15 U.S.C. §§ 1682 *et seq.*

**A. The Mortgage Default and Litigation Settlement**

On June 17, 2004, plaintiffs Linnette Resto-Feliciano
("Resto") and Luis Osvaldo Figueroa-Kercado ("Figueroa")
(collectively, "plaintiffs") borrowed funds from Associates
International Holding Company ("Associates International") to
purchase a residential property in Ceiba, Puerto Rico. (Bankr.
Pet. No. 20-086, Docket No. 1 at p. 6.) The plaintiffs failed to
remit their monthly mortgage payments. Id. Subsequently, DLJ
Mortgage Capital acquired the mortgage from Associates
International. Id. at p. 5. SPS is the loan servicing company
for DLJ Mortgage Capital. Id.

After defaulting on the mortgage, Resto and Figueroa
commenced a civil action against American Security Insurance
Company before the Puerto Rico Court of First Instance, Fajardo
Division. Id.; see Luis Figueroa-Quercado v. Am. Sec. Ins. Co.,
Case No. CE2018CV00036. The parties then entered into a settlement
agreement. Id. at p. 7.[1] Pursuant to this agreement, Resto,
Figueroa, and SPS received a check for $27,332.20. Id. Resto
and Figueroa asserted exclusive ownership of the settlement
proceeds, however, and requested that DLJ Mortgage Capital and SPS

---

[1] The complaint states that the parties executed the settlement agreement "[on]
or about April 2, 2020." (Bankr. Pet. No. 20-086, Docket No. 1 at p. 7.) This
allegation is a typographical error. Resto and Figueroa signed the settlement
on April 2, 2019. (Adv. Proc. No. 20-086, Docket No. 24, Ex. 1 at p. 10.)

endorse the check to them.  Id. at p. 7.  The defendants refused
to do so.   Id.  In fact, DLJ Mortgage Capital and SPS proposed
that Resto and Figueroa surrender the settlement check to cure the
mortgage default.  Id. at p. 8.[2]

### B. The Bankruptcy Petition

On August 2, 2019, Resto and Figueroa filed a bankruptcy
petition pursuant to Chapter 13 of the Bankruptcy Code.  Bankr.
Pet. No. 19-04427 (ESL), Docket No. 1; see 11 U.S.C. § 1301 *et
seq.*[3]  The petition states that the settlement check and "potential
claims" arising pursuant to the FDCPA constitute "money or property
owed" to the estate.  Id. at p. 18.  Resto and Figueroa listed SPS
as a creditor with an unsecured claim.  Id. at p. 29.  SPS received
notice of the bankruptcy petition on August 5, 2019.  (Bankr. Pet.
No. 19-4427, Docket No. 8 at p. 1.)  The notice informed SPS that:

> The filing of the case imposed an automatic stay against
> most collection activities.  This means that creditors
> generally may not take action to collect debts from the
> debtors, the debtors' property, and certain codebtors .
> . . Creditors cannot demand repayment from debtors by
> mail, phone, or otherwise.

---

[2] The settlement agreement contains a confidentiality provision.  (Docket No.
1, Ex. 4.)  Whether the insurance proceeds belong to Resto and Figueroa is
immaterial to the Court's analysis of the motion to withdraw reference.

[3] Because Resto and Figueroa filed a bankruptcy petition, the automatic stay is
applicable subject to enumerated exceptions in 11 U.S.C. section 362.  See
Montalvo v. Autoridad de Acueductos y Alcantarillados, 537 B.R. 128, 140 (Bankr.
D.P.R. 2015) (holding that the automatic stay becomes operative upon the filing
of a bankruptcy petition, and "is extremely broad in scope," applying "to almost
any type of formal or informal action taken against the debtor") (citation
omitted) (Lamoutte, Bankr. J.).

Id. at p. 2. DLJ Mortgage Capital and SPS allegedly continued, however, to demand payment for pre-petition debt. (Adv. Proc. No. 20-086, Docket No. 1 at p. 9.)  In addition to sending monthly account statements, DLJ Mortgage Capital and SPS failed to "turnover" the settlement check.  Id. at p. 10.

DLJ Mortgage Capital filed a proof of claim ("POC") for $68,404.27, maintaining that a purported lien on the Ceiba property secured the mortgage.  (Docket No. 3, Ex. 1 at p. 2.)  A contemporaneous title search revealed, however, that the "alleged mortgage was not perfected and/or recorded."  (Adv. Proc. No. 20-086, Docket No. 1 at p. 25.)[4]  Counsel for Resto and Figueroa requested that DLJ Mortgage Capital and SPS amend the POC, stating that: (1) solicitation of mortgage payments "would be in violation of the Automatic Stay," and (2) the defendants "[had] no legitimate claim to the [plaintiffs' settlement] check."  Id. at p. 25. Through counsel, DLJ Mortgage Capital and SPS responded as follows:

---

[4] Pursuant to Puerto Rico law, "it is indispensable, in order that [a] mortgage may be validly constituted, that the instrument in which it is created be entered in the registry of property."  P.R. Laws Ann. tit. 31 § 5042. "[R]ecording is essential to the validity of a mortgage . . . [and] one that is not recorded is a nullity."  Carrión v. USDA Rural Hous. Serv., Case No. 10-10792, 2012 Bankr. LEXIS 2720 at *22 (Bankr. D.P.R. June 13, 2012) (quoting In re Las Colinas, Inc., 426 F.2d 1005, 1016 (1st Cir. 1970)) (Lamoutte, Bankr. J.); see also Rosario Pérez v. Registrador, 15 P.R. Offic. Trans. 644, 649 (P.R. 1984) (holding that "the security of a . . . credit does not constitute a real security – mortgage — until it is entered in the [Property] Registry").

>       [Plaintiffs are] correct as to the attached Title Search
>       showing that the mortgage had been notified, taken out
>       of the Registry and not presented again.  This is an
>       issue that should have been corroborated prior to filing
>       [the POC].  Today I contacted SPS to either provide
>       evidence of proper recording of the mortgage lien, which
>       will allow us to file [an amended POC], or, in its
>       absence, to authorize the withdrawal of the claim, which
>       will clear the way for the confirmation of Debtor's
>       Chapter 13 plan.

Id. at p. 27.  Moreover, defense counsel requested additional information regarding the settlement check.  Id.

Attempts to resolve the mortgage dispute without judicial intervention proved futile.  Resto and Figueroa filed an objection to the POC, asserting that DLJ Mortgage Capital held "at best, an unsecured claim against the estate."  (Bankr. Pet. No. 19-4426, Docket No. 29 at p. 1.)  The bankruptcy court granted the plaintiffs' objection without opposition on February 10, 2020. (Bankr. Pet. No. 19-4426, Docket No. 36)

**C. The Adversary Proceeding**

Resto and Figueroa then commenced an adversary proceeding against DLJ Mortgage Capital and SPS on June 16, 2020.  (Adv. Proc. No. 20-086, Docket No. 1.)  Counts one and two aver that the defendants violated the automatic stay. First, Resto and Figueroa allege that DLJ Mortgage Capital and SPS allegedly "demanded that payment on the bankruptcy account be made" after the Chapter 13 petition.  Id. at p. 13.  Second, Resto and Figueroa maintain that

DLJ Mortgage Capital and SPS appropriated estate assets by refusing to endorse the settlement check.  Id.  Counts three through six arise pursuant to the FDCPA, alleging, *inter alia*, that the defendants "misrepresent[ed] the character, amount, or legal status of the debt."  Id. at pp. 16—23.

On September 24, 2020, DLJ Mortgage Capital and SPS answered the complaint and moved for mandatory withdrawal of reference.  (Adv. Proc. No. 20-086, Docket Nos. 19 & 20.)  DLJ Mortgage Capital and SPS argue that the bankruptcy court lacks jurisdiction with respect to the FDCPA causes of action.  Id.  Accordingly, they contend that this Court must withdraw reference to the bankruptcy court.  Id.  The Court disagrees.

## II.  The Jurisdiction of the Bankruptcy Court

Federal courts are courts of limited jurisdiction.  Destek Grp. v. State of N.H. Pub. Utils. Comm'n, 318 F.3d 32, 38 (1st Cir. 2003); Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995) ("The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute.").  Although district and bankruptcy courts are federal entities, they derive their authority from distinct branches of government.  The latter "is established pursuant to Article I, rather than Article III, and its jurisdiction is delimited accordingly."  Sheridan v. Michels, 362 F.3d 96, 99 (1st Cir. 2004).  "The judicial power of

the United States must be vested in courts whose judges enjoy the protections and safeguards specified in [Article III]." In re Parque Forestal, 949 F.2d 504, 508 (1st Cir. 1991); (quoting N. Pipeline Co. v. Marathon Pipeline, Co., 458 U.S. 50, 62 (1982)). Because bankruptcy courts derive their authority from Congress, they "do not have a source of jurisdiction, but rather, their jurisdiction flows from the district courts." Empresas Omajede, Inc. v. La Electronica, Inc., 243 B.R. 211, 216 (D.P.R. 1999) (Pieras, J.).

Congress enacted the Bankruptcy Act of 1984 to address constitutional flaws in the preexisting statute, granting district courts "original but not exclusive jurisdiction" of all bankruptcy actions. 28 U.S.C. § 1334(b); see Wendy L. Trugman, The Bankruptcy Act of 1984: Marathon Revisited, 3 YALE L. & POLICY REV. (1984); 1 Collier on Bankruptcy § 1.01 (16th ed. 2020) ("Congress rewrote the Judicial Code to essentially allow bankruptcy judges to exercise broad jurisdiction, but with built-in review by Article III judges."). District courts may refer Chapter 11 actions and proceedings to bankruptcy courts. Marathon Pipeline, Co., 458 U.S. at 63 n. 13; see 28 U.S.C. § 157(a). In the United States District Court for the District of Puerto Rico, bankruptcy cases are referred automatically to the bankruptcy court pursuant to the

Court's General Order of July 19, 1984.  Juan Torruella, Resolution (July 19, 1984).[5]

## A. The Core/Non-Core Dichotomy

Bankruptcy proceedings include those that: (1) arise under Title 11, (2) arise in cases under Title 11, and (3) relate to cases under Title 11.  28 U.S.C. § 1334(b); see, e.g., Gupta v. Quincy Med. Ctr., 858 F.3d 657, 662 (1st Cir. 2017) (holding that "in order for the [debtor's] severance claims to fall within 28 U.S.C. § 1334's statutory grant of jurisdiction, the claims must 'arise under,' 'arise in' or 'relate to' a case under title 11"). . . .  The first and second subcategories are core proceedings, tied inextricably to the bankruptcy petition and existing only in the Title 11 context.  See Wood v. Wood, 825 F.2d 90, 96 (5th Cir. 1987) ("Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11."); New Eng. Power and Marine, Inc. v. Town of Tyngsborough, 292 F.3d 16, 68 (1st Cir. 2002) ("'Arising in' proceedings generally are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.") (quotation omitted).

---

[5] Available at http://www.prd.uscourts.gov/sites/default/files/documents/88/BankruptcyCases.pdf (last visited December 16, 2020).

Congress authorized bankruptcy courts to "hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1); see Gupta, 858 F.3d at 662 n. 5 ("Proceedings 'arising under title 11, or arising in a case under title 11' are both considered 'core proceedings' in which the bankruptcy court may enter final orders and judgments."). Because adversary actions asserting violations of the automatic stay are core proceedings, the bankruptcy court may consider and adjudicate the first and second causes of action in the complaint. 28 U.S.C. § 157(b)(2); N. Parent, 221 B.R. 609, 627 (Bankr. D. Mass 1998) ("It is beyond dispute that proceedings brought pursuant to 11 U.S.C. § 362 are core.").

In contrast, non-core proceedings are "related to" the bankruptcy petition, "potentially [having] some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise [having] an impact upon the handling and administration of the bankruptcy estate." Gupta, 858 F.3d at 663. Claims arising pursuant to the FDCPA are non-core proceedings. See, e.g., Holloway v. Am. Infosource, 538 B.R. 137, 140 (Bankr. M.D. Ala. 2015) ("[The debtor's] FDCPA claims are non-core."). Pursuant to 28 U.S.C. section 157(c), the bankruptcy court:

> may hear a proceeding that is not a core proceeding but
> that is otherwise related to a case under title 11.  In
> such proceeding, the bankruptcy judge shall submit
> proposed findings of facts and conclusions of law to the
> district court, and any final order or judgment shall be
> entered by the district judge after considering the
> bankruptcy judge's proposed findings and conclusions and
> after reviewing de novo those matters to which any party
> has timely and specifically objected.

28 U.S.C. § 157(c).  In non-core proceedings, "the bankruptcy court

acts as an adjunct to the district court . . . similar to that of

a magistrate or special master."  Maitland v. Mitchell, 44 F.3d

1431, 1435 (9th Cir. 1995).

The bankruptcy court may "enter appropriate orders and

judgments, subject to review [by the district court]" with the

parties' consent.  28 U.S.C. § 157(c)(2); see Wellness Int'l

Network, Ltd. v. Sharif, 135 S. Ct. 1932, 1940 (2015) ("Absent

consent, bankruptcy courts in non-core proceedings may only

'submit proposed findings of fact and conclusions of law,' which

the district courts review de novo.").  DLJ Mortgage Capital and

SPS withheld "consent to the entry of final orders and judgment by

the Bankruptcy Court."  (Adv. Case 20-086, docket No. 19 at p. 2.)

Accordingly, the bankruptcy court may submit findings of fact and

conclusions of law regarding the FDCPA claims.  See Fed. R. Bankr.

P. 9033.  Subsequently, this Court "may accept, reject, or modify

the proposed findings of fact or conclusions of law, receive

further evidence, or recommit the matter to the bankruptcy judge
with instructions." Id.

### 1. The FDCPA Causes of Action and "Related to" Jurisdiction

Resto and Figueroa shoulder the burden of establishing
federal jurisdiction by a preponderance of the evidence. See Bank
One, Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992).  The
complaint invokes "related-to" jurisdiction in a perfunctory
manner, asserting: "If this action has any non-core elements,
[Resto and Figueroa] hereby express consent to the entry of final
judgment by a Bankruptcy Judge." (Adv. Pro. 20-086, Docket No. 2
at p. 4.)

The First Circuit Court of Appeals has held that the "the
usual articulation of the test for determining whether a civil
proceeding is 'related to' bankruptcy is whether the outcome of
that proceeding could conceivably have any effect on the estate
being administered in bankruptcy." In re G.S.F. Corp., 938 F.2d
1467, 1475 (1st Cir. 1991) (concluding that the bankruptcy court
had subject matter jurisdiction because the disputes would "put
the [debtor's] estate at risk of liability for what could be a

substantial damage award.").⁶  In fact, "[t]he statutory grant of

'related to' jurisdiction is quite broad," extending to "the entire

universe of matters connected with bankruptcy estates."  In re

Boston Regional Med. Ctr., Inc., 410 F.3d 100, 105 (1st Cir. 2005)

(citation omitted); see Celotex, 514 U.S. at 307 ("Congress did

not delineate the scope of 'related to' jurisdiction, but its

choice of words suggests a grant of some breadth.").

     Courts determine the existence of "related to" jurisdiction

on a case-by-case basis.  Bos. Reg'l. Med. Ctr., 410 F.3d at 107

("The language of the jurisdictional statute, 28 U.S.C. § 1334, is

protean, and what is 'related to' a proceeding under title 11 in

one context may be unrelated in another.")  For instance, related-

to jurisdiction may, but need not, exist in adversary proceedings

containing FDCPA causes of action.  Compare Román-Pérez v.

Operating Partners Co. LLC, 527 844, 854 (Bankr. D.P.R. 2015)

("[The] court finds that the FDCPA claims in the instant case are

---

⁶ In In re G.S.F. Corp, the First Circuit Court of Appeals adopted verbatim the Pacor test, first articulated by the Third Circuit Court of Appeals.  See Pacor, Inc. v. Higgins, 734 F.2d 984 (3rd Cir. 1984).  The Pacor court elaborated that a case "related to" the bankruptcy petition "need not necessarily be against the debtor or against the debtor's property," and that "an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  Id. at p. 994.  This broad application of "related to" jurisdiction is the rule established by the Supreme Court of the United States and is the majority rule of sister circuits.  See Celotex, 514 U.S. 300 (1995); In re Lemco Gypsum, Inc., 910 F.2d 784 (11th Cir. 1990); In re American Hardwoods, Inc., 885 F.2d 621 (9th Cir. 1989); In re Titan Energy, Inc., 837 F.2d 325 (8th Cir. 1988); In re Wood, 825 F.2d 90 (5th Cir. 1987); In re Dogpatch U.S.A., Inc., 810 F.2d 782 (8th Cir. 1987); In re A. H. Robins Co., Inc., 788 F.2d 994 (4th Cir. 1986).

'related to' the bankruptcy estate, and thus, the court can exert
subject-jurisdiction over them.") (Lamoutte, Bankr. J.) <u>with</u>
<u>Arzuaga v. Quantum Servicing Corp.</u>, Adv. No. 03-1215, 2012 Bankr.
LEXIS 1443, (Bankr. D.P.R. 2012) (holding that the bankruptcy court
"has no jurisdictional authority over Plaintiff's FDCPA claim")
(Tester, Bankr. J.).  In sum, the existence of federal jurisdiction
hinges on whether this case is sufficiently related to Resto and
Figueroa's Chapter 13 petition.

        The FDCPA permits an aggrieved party to recover damages in
a sum not to exceed $1,000.  15 U.S.C. § 1692k(a)(2)(B).  The
bankruptcy court confirmed the Chapter 13 plan on October 4, 2019,
ordering Resto and Figueroa to report "any change to {their}
financial/economic circumstances, particularly income increase or
decreases and the acquisition of assets by whatever means."
(Bankr. Case. No. 19-1447, Docket No. 18 at p. 1.)  The First
Circuit Court of Appeals has held that property acquired after
confirmation is property of the estate.  <u>Barbosa v. Soloman</u>, 235
F.3d 31, 36-37 (1st Cir. 2000); <u>Yuet Yiu Chung-Chan v. Banklowski</u>,
Case No. 09-10926, 2009 U.S. Dist. LEXIS 106857 at * 1 (D. Mass.
Nov. 17, 2009) (affirming bankruptcy court's holding that funds
obtained after confirmation "of a post-petition settlement were
property of the Chapter 13 estate").  Should Resto and Figueroa
prevail, the damages derived from the FDCPA causes of action will

augment the estate.  See Torres-Meléndez v. Collazo, Connelly & Surillo, LLC, Case No. 19-2803, 2020 Bankr. LEXIS 297 (D.P.R. Feb. 3, 2020) (holding that the bankruptcy court possessed "related to" jurisdiction "based on violations of the FDCPA" because "[a]ny income or proceeds that the plaintiffs/debtors may ultimately gain from this action must be used to" fund the Chapter 13 plan) (Lamoutte, Bankr. J.); Trokie v. U.S. Bank Nat'l Ass'n, 590 B.R. 663, 677 (Bankr. M.D. Pa. 2018) (holding that the bankruptcy court "has subject-matter jurisdiction over Debtor's FDCPA violations claims because these alleged violations occurred post-petition but before Debtor's Chapter 13 bankruptcy case was closed, dismissed, or converted").  Consequently, the bankruptcy court possesses related-to jurisdiction over the FDCPA causes of action.

**III. Mandatory Withdrawal of Reference to the Bankruptcy Court**

DLJ Mortgage Capital and SPS contend that the Court must withdraw the FDCPA causes of action from the bankruptcy court. (Case No. 20-1562, Docket No. 1, Ex. 3.)  Pursuant to 28 U.S.C. section 157(d):

> The district court **shall**, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organization or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added). Mandatory withdrawal generates "much litigation and interpretation." 1 Collier on Bankruptcy § 3.04 (16th ed. 2020). Congress promulgated this provision to "assure that only Article III Judges determine issues requiring more than a routine application of federal statutes outside the Bankruptcy code." Alfonseca-Báez v. Doral Fin. Corp., 376 B.R. 70, 73 (D.P.R. 2007) (citation omitted) (Casellas, J.).

Courts within the First Circuit "have overwhelmingly construed [mandatory withdrawal] narrowly, because to do otherwise would eviscerate much of the work of the bankruptcy courts." In re Corporación de Servicios Médico Hospitalarios de Fajardo, 227 B.R. 763, 765 (D.P.R. 1998) (Casellas, J.) (citation and quotation omitted). Section 157(d) is not an "escape hatch by which bankruptcy matters could easily be removed to the district court." Mastosantos Commer. Corp. v. Mastosantos-Vallecillo, Case No. 19-1610, 2020 U.S. LEXIS 22028 at *15 (D.P.R. Feb. 7, 2020) (citing Fajardo, 227 B.R. at 765) (Delgado-Colón, J.).

Removal from bankruptcy court is mandatory "only where resolution of the adversary proceeding involves substantial and material consideration of non-bankruptcy federal statutes." Alfonseca-Báez, 376 B.R. at 73 (quoting Ponce Marine Farm v. Browner, 172 B.R. 722, 724 (D.P.R. 1994) (Laffitte, J.)). The motion to withdraw reference is doomed unless consideration of the

FDCPA claims "entail more than routine application of federal non-core law to the facts." Ponce, 172 B.R. at 724 (citation omitted). The bankruptcy court is divested of jurisdiction "when the non-core issues dominate the bankruptcy issues." Id. (denying defendant's motion to withdraw because "the bankruptcy court's consideration of The Clean Water Act . . . will only be tangential").

**A. Mandatory Withdrawal is Inappropriate**

DLJ Mortgage Capital and SPS set forth two arguments in support of the motion to withdraw reference. (Case No. 20-1562, Docket No. 1, Ex. 3.) First, they assert that "[Resto and Figueroa] do not properly allege any post-petition collection efforts that would constitute a possible violation of the automatic stay." Id. at p. 3. Second, DLJ Mortgage Capital and SPS argue that the material "facts [occurred] pre-petition, but the relevant legal questions involve unresolved issues of federal law unrelated to Title 11 law." Id. at p. 4.

Allegations that DLJ Mortgage Capital and SPS violated the automatic stay fall within the purview of the bankruptcy court. See Rivera v. Lake Berkley Resort Master Ass'n, 511 B.R. 6,14 (Bankr. D.P.R. 2014) (noting that "a willful violation claim under 11 U.S.C. § 362 'must be brought in the bankruptcy court, rather than in the district court, which only has appellate jurisdiction

over bankruptcy cases.'") (quotation omitted) (Lamoutte, Bankr. J.). This Court need not address the merits of these claims to determine that withdrawal of the FDCPA causes of action is unwarranted.

The defendants' second argument is equally unavailing. DLJ Mortgage Capital and SPS misconstrue the adversary proceeding. They suggest that "resolution of these controversies involve the interpretation of the scope of the FDCPA in the context of pre-petition Settlement Agreement." (Case No. 20-1562, Docket No. 1, Ex. No. 3 at p. 4.) This is a simplistic summation of the claims set forth in the complaint. The FDCPA serves to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Resto and Figueroa must demonstrate that they were:

> (1) object to a collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants have engaged in an act or omission prohibited by the FDCPA.

Claudio v. LVNV Funding, LLC, 463 B.R. 190, 193 (Bankr. D. Mass. 2012) (citation omitted). The settlement check issued in April of 2019, but the purported violations of the automatic stay and the FDCPA allegedly occurred before and after the filing of the Chapter 13 petition. It is, thus, apparent that the FDCPA claims do not divest the bankruptcy court of jurisdiction because they are "related to" to the bankruptcy proceeding inasmuch as the ultimate

outcome of those claims will affect the bankruptcy estate.  See
Alfonseca-Báez, 376 B.R. at 73 (nothing that "the mere presence of
a non-title 11 issue, even if it is outcome-determinative, does
not require mandatory withdrawal").

DLJ Mortgage Capital and SPS allude to "unresolved issues of
federal law." (Docket No. 1, Ex. 3 at p. 4.)  The record is devoid
of evidence suggesting that novel questions of law are present in
the adversary proceedings.  Moreover, bankruptcy courts within the
First Circuit have held that the FDCPA and the bankruptcy code are
coexistent rather than mutually exclusive.  See, e.g., Román-
Pérez, 527 B.R. at 864 (holding that the remedies provided by "the
FDCPA are available in bankruptcy when Debtors have no other
remedies for damages under the Bankruptcy Code for the same
damages"); Martel v. LVNV Funding, LLC, 539 B.R. 192, 198 (Bankr.
D. Me. 2015) ("The [Bankruptcy] Code and the FDCPA are not
irreconcilable and creditors are under the obligation to follow
both.").

Ultimately, the adversary proceeding does not present
"substantial and material" questions of non-code federal law.
Alfonseca-Báez, 376 B.R. at 73 (quoting Ponce, 172 B.R. at 724);
Harris-Nutall v. Nationstar Mortg., LLC, Adv. Proc. 15-3114, 2016
Bankr. LEXIS 4623 at *11 (N.D. Tx. May 19, 2016) ("[A]lthough
FDCPA, TILA and RESPA are unquestionably federal statutes, they

Civil No. 20-1562 (FAB)                                              19

are statutes bankruptcy courts across the national have considered
on numerous occasions, holding that mandatory withdrawal of the
reference is not appropriate.") (citing cases). Accordingly, the
motion to withdraw reference is **DENIED**.

## IV.  Conclusion

For the reasons set forth above, the Court **DENIES** DLJ Mortgage
Capital and SPS's motion to withdraw reference.  (Docket No. 1,
Ex. 3.) The Clerk will transmit this opinion to the bankruptcy
court.  This case is now closed for administrative purposes.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 21, 2020.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE

Civil No. 20-1562 (FAB)                                                    20